Good morning, Your Honor. Donald Falk for Appellant Rock River Communications. What this case is about is whether Universal may use commercial muscle to get what it could not get and knew it couldn't get without proving exclusive rights in an infringement action. Whether it can reverse the course and take advantage of confused and disputed facts to get the commercial benefit of an affirmative action it could never bring. Well, wait a minute. The problem I have, let me just say this. As a trial judge, I looked at this thoroughly. And at the end of the day, to me, the overriding issue is whether or not there were disputed facts such that it was inappropriate for the trial judge to grant summary judgment. Based on what was in the fourth amended complaint and what survived after a lot of iterations that led to the fourth amended complaint. And then the trial judge granted the motion in limine. He basically said there wasn't evidence to prove anything, then invited another summary judgment and granted it. So to me, the real issue is whether or not there are disputed issues of facts such that it was inappropriate for the trial judge to grant summary judgment. To me, that's really the overriding issue. Do you agree or disagree? Oh, absolutely, Your Honor. And that is where these issues focus in. And the basis for the trial court's judgment was that Rock River had not submitted sufficient evidence to show that it had a reasonable probability that it would profit from its prospective economic advantage in the absence of Universal's interference. And that the trial court decided that because of what it viewed as flaws in the title of San Juan, the licensor to Rock River, that Rock River was barred at the door from pursuing its claims. And that is, we believe, both a misapprehension of the law and the way the analysis works here, and overlooks substantial disputed facts that when viewed, giving the reasonable inferences to Rock River, as should happen in this context. Well, tell us what those were. Well, first, the structure of the analysis is this is not, Rock River was not bringing an infringement action against somebody else. The question, the analysis is whether it had a reasonable expectancy of profit in the absence of the interference. And the district court relied on a series of cases that involved, basically, unclean hands cases, where the plaintiff had done something that was flatly illegal, that would have violated a court order, plain terms of the statute or something of that kind. Rock River's hands are completely clean here. It licensed the tracts. It added something to them and got copyrights on the additional new material, which is what gave these remits their commercial value. And at that point, and certainly under the circumstances here, where the same licenses, similar licenses of the same tracts had been out for 30 years without any interference, certainly at that point, certainly at that point, Rock River has a reasonable expectancy. And it was incumbent on Universal to show that somebody would show up and exercise a right to exclude Rock River from doing that. And the facts here, I think, are more than sufficient to raise a tribal issue, whether that could or would have happened, certainly whether it could have happened successfully. And the reason for that is there is evidence, apart from the snippet of the oral testimony that was actually excluded, there is both oral testimony that Perry had delivered tracts, and that that was the source of San Juan's licensing business when it came to Perry's tracts. San Juan licensed a lot of other things. And that, in fact, more important, there is a long course of performance that involves not only San Juan and Perry, but also the rights holders from whom Universal draws its rights, those who would be most likely and the only ones identified that might possibly assert an exclusive right. They did nothing for 30 years. The reason they did nothing is because the tangled and confused record of overlapping grants of licenses, they knew and Universal knew that proving an exclusive right enough to exclude somebody else just wasn't there. Or at least we created, I should say, we created a tribal issue as to that fact. We're not saying we're entitled to judgment as a matter of law. What we're saying is there is enough in this record, course of performance and forbearance, by Universal's predecessors, among others, to support a reasonable inference that Rock River would have realized its expectancy without interference, just as had the dozens, hundreds of other licensees over the past 30 years. And that is the essence of this case. Could you address on the issue of disputed fact the Norm Pennington defense? Absolutely. What keeps that alive? What keeps that alive is that Universal was well aware that the rights that it obtained, certainly at the time of the principal interference when it just had the JAG rights, were not going to be exclusive. There were competing rights out there from the Lee-Perry line that have been out there unhindered for decades and decades. And even after the last, I believe it's only one incident of interference that occurs after the acquisition of the Trojan rights, that Universal acquired the Trojan rights, even then you still have the same questions as there's a block quote from Learned Hand in the opening brief that says, when you sit, and this is Universal that's sitting. It's its predecessors that are sitting for decades in this kind of open competition where there are openly competing rights, and no one is claiming an exclusive right against these other people. Sometimes when somebody else pops up, something may happen, but nobody does more than whiff a little bit at one of the other basic rights holders from the Lee-Perry line or from the Danny Sims line and tries to say, we have an exclusive right to exclude you. That goes on for decades, and that's enough. That's enough. That forbearance in line with the associated course of performance and the licenses itself is enough to raise a tribal issue as to whether Universal knew that it didn't have a case and that it couldn't go forward and it just wasn't going to happen. Is it beyond jury decision? No, it's not absolutely established. But is there enough for a jury to determine that Universal knew full well that it had nothing, and it couldn't exclude San Juan, let alone Rock River? Yes, there's enough there. And that's all there has to be at this stage. And that's totally unaffected by the oral testimony that was excluded. Okay. All right. Let me continue on a couple of them. I hope there will be some more questions, but there are a couple other. I mean, those are the basic points, and I think the Court understands the crux there. And our point is that there's lots of overlapping, complex, contradictory evidence. Universal, in its briefs, uses words like, well, our view is more plausible or it's very suspicious what Rock River's claiming. Those are classic jury issues. Those are exactly the kind of things that should go to a jury. Just because there's time on the clock. Oh, I don't intend to. I'm going to use some of it, but I have no intention of using all of it unless there are a lot of longer questions, believe me. The short, short declaratory sentences are the best. I've got a couple short. I've got a couple up my sleeve, Your Honor. Well, one point. Make sure you don't take your shirt off. I promise I'll keep my shirt on, Your Honor. I would like to ask a question on the interference claim. Let's assume that you had no rights whatsoever, none, in zilch. You knew it. That is, Rock River did. And they put out the remix. And UMG comes along and says, with the same uncertainty of title that they have, but they say, you have absolutely no right to be out there. And that's what they tell these distributors and the like. So you have no claim to these. Rock River knows going out that there may be some people who do have claims. Does that weigh in the balance at all in the nature of what Rock River's claims would be? It's a hypothetical. No, I understand that. What seemed to bother the district court was, how can you go out and claim that you're going to be able to sell these records against claims of people who were out there who have superior rights to you? That seemed to inform her focus on the legality, if you will, of what your client's interest was. Well, I mean, in the hypothetical, if Rock River knew it had no rights, that would fall much more closely within the unclean hands lines of cases where people know full well that they're doing something that's improper. But what we have here, and in fact what the excluded evidence could have been and should have been admitted to show, was that that was not where San Juan was going. Remember, Rock River was doing everything above board. And I think given Rock River's position, it is incumbent to show that there would have been some problem with the expectancy in the absence of interference. It is not a situation where Rock River is coming in there with nothing and doing something that would violate a court order or is asserting somebody else's patent or has already been adjudicated to be an infringer or anything like that. And your hypothetical would be quite different, but that's not what we have here. What we have is a series of disputed facts. Well, I posit it as a hypothetical. But that's a determinative difference on that end. And I don't think you'd ever get to Norr Pennington on that side. I mean, I think that's extremely naughty when the one side, do you have a privilege under Norr Pennington to assert a, I mean, if it's a completely correct claim, if it was UMG saying they don't have the rights, not we do, or somebody else does, there might be something different there. But I don't think it really gets into the Norr Pennington analysis because you'd never get there. Where you can get here, however, is in addition to what we've discussed already, even if the evidence were excluded and were taken to have the effect that the district court said it had, which is to say to take away a triable issue as to the validity of these licensed rights that have been in the marketplace for decades, then at a minimum, Rock River, the action should be remanded for Rock River to pursue its claims, whatever it can prove in the way of damages as to the other nine tracts. That's how the market works now. Universal says they didn't create a damages study aimed at that. Well, Universal didn't make these arguments. We didn't create a damages study in anticipation of a case that hadn't been framed that way. It can be done, could have been done, can be done on remand. But more important, I think, in the nature of this case where you have remixes, it is the remix that really gives the value to this song as opposed to what appear to be dozens of other releases every year and a variety of labels. I think what you have here is much closer in figuring out what would have happened and whether Universal has carried its burden, not just a burden of proof before a jury, but a burden of cutting us off at the threshold. The remedy might well be something like in the Oppen case, the rear window case, where you did have a lack of rights, but the addition was significant enough that even under the prevailing presumption of an injunction in infringement cases that has since been peeled back a little bit by the Supreme Court's eBay decision, even then this Court said, well, this is really probably not a case where there should be an injunction. And here I think where you would have at most a partial limitation on three of the tracks, you either allow the other nine to go forward as to their individual value or I think more appropriately you say, well, expectancy is diminished. It's a damages question, not something that cuts off the cause of action. I'll just say a couple of words about the excluded hearsay, which I don't think is really dispositive here, but it helps our case. And so I think if the Court reverses its addressing these issues, it should address that as well. The hearsay here, there are two sort of fundamental reasons it should have come in. The one that was primarily first asserted below was the state of mind exception, which may seem like an odd fit, but it does fit here for this reason. We've just been discussing whether Rock River, for that matter San Juan, had unclean hands. And San Juan's unclean hands shouldn't affect Rock River, but sure as heck if San Juan's hands are clean, it should shift the burdens in this case and push it off the flat bar at the outset. And what that evidence confirmed was that San Juan thought it was doing something completely above board and was not out trying to sell things that it thought it didn't own. It was trying to sell things it thought it did own. And the greater policy question here is where we have oral licenses that go on for a long time. They can go on for a very, very long time. There is, I think, a fundamental problem with saying all of those disappear if the people who have the conversation die or are unavailable. That may be the case in some cases. It certainly may be the case in some cases. But in this case, where you have substantial corroborating evidence in the form of a long course of performance and forbearance by Universal's predecessors, basically an equilibrium where everyone realized that whatever rights they had against the rest of the world, they really didn't have much in the way of rights against each other for 20, 30 years. In that circumstance, that evidence has that extra reliability that should permit it to come in. So if there are no – Well, a hearsay rule has all kinds of exceptions. It does indeed, Your Honor. And in this case, I believe those – that this particular snippet of testimony, even though not absolutely necessary to the judgment, if this case were to be retried, it should come in. And if the court disagrees and does agree with the district court that it is necessary, then it should come in obviously as well. Okay. Thank you. Thank you, Your Honor. Thank you, Your Honor. Good morning. May it please the Court. I am Kelly Klaus from Munger, Tulls, and Olson for the defendants and appellees in this matter. Your Honors, we submit the judgment here should be affirmed for either one of two reasons. One, that the district court correctly granted summary judgment on the tortious interference claim because Rock River failed to prove, failed to introduce any admissible evidence that it had the lawful right to realize... Now, where, counsel, where does that come from in California law? I have searched all of the cases and the restatement and everything. Where does it say that the person claiming interference with a business expectation has to prove that it has a legal right at stake? Cite me a case that makes that statement. That's an element that's not articulated in the California courts where they list the elements of interference. It's not a contract. It's a claim. It's an interference with business opportunity. Give me a case that supports the district court's finding that the plaintiff in this case has a burden of showing it has a legal right. I give you the cases that we've cited in our brief, Your Honor. I've cited the Renaissance Realty case, the A. Mark Coyne case, the Society Comptoir case from the Southern District of New York, albeit not a California case. Those don't... All stand for the proposition that the expectancy has to be a legal one. It has to be one that... Where does it come from? It comes from the... Legal in what sense? Legal in the sense that it's something that the plaintiff actually has the right to do, that it's something the plaintiff has the right to do. If the plaintiff in this case did not have... If the plaintiff in this case was engaged in... Is that a pleading requirement that they have to prove that at the outset as part of their case, or is that an argument that you make as an affirmative defense? We think that it should be an element of their case, Your Honor. If it's not and it's an affirmative defense on our part, it doesn't matter. And the reason that it doesn't matter goes to the questions that Your Honor has asked of counsel at the outset, which is where is the disputed fact on the question of your having a valid chain of title to distribute? Well, no, wait a minute. You have to have a superior right in order to establish that Rock River doesn't have the right to go out with its remix. We said that we had the superior right, Your Honor. The superior right was we had the license from JAD, which mentioned these three tracks. They had nothing establishing that they had the right to those three tracks. Let me ask this question. Yes, of course. In Perry's affidavit, which I read carefully, he says on page 85-0411 of the record, in addition, I also made other recordings with Marley, including Natural Mystic, Small Axe, All-in-One, and Mr. Brown, and a recording called Rainbow Country, which has never been released. The reference to made other recordings, why wouldn't that support there being an inference that it applies to some of the recordings that are at issue in this dispute? It wouldn't support an inference, Your Honor, because there are many affidavits from Mr. Perry, and there are many lists of works from Mr. Perry. I can give you the sites to the record as to where they are. There are numerous affidavits from Mr. Perry. They're at ER 451, 457-58. I'm sorry, these are his licenses, 443, 440-41, 438. Not one of them lists these three tracks. He gave plenty of affidavits over the years. He created plenty of lists of works and had a chance to fill that out. The second thing is there is no evidence in the record of San Juan ever having paid Mr. Perry a dime for these tracks, nothing. There's nothing to corroborate it. The only evidence that ultimately was the only evidence, and this, let me also say, this goes to a point that counsel raised that the three tracks issue was somehow submitted late in the case, that this materialized out of nowhere. In fact, long before there was a lawsuit, when this issue first arose in June of 2007, Mr. Cox of Universal wrote to Rock River's lawyer and said, there are a number of problems why we think we have the superior right here, but even with these affidavits and documents that you've provided to us, there's no evidence that Mr. Perry was the producer of any of these three tracks, that he's ever claimed any ownership of these three tracks, even though he's claimed evidence of many, many, many others. So when Your Honor says that Mr. Perry does say somewhere that there were other tracks, first of all, it's not specific as to any of these. And if he doesn't, and if he is, if in all of the other, in all of the other affidavits, all of the other lists, everything else that is in the record with Mr. Perry's claim as to having owned so many of these works, those three aren't there. There's no proof of delivery. There's no proof, no admissible proof of delivery, no admissible, no proof at all of payment. What ultimately this came down to and what was the basis for Judge Snyder's ruling was that the only thing that was in the record to establish San Juan's having obtained a license to these three works was the testimony of Mr. Chernow, the president of San Juan, not that he had had a conversation with Mr. Perry, but that his father had had a conversation with Mr. Perry. And the key hearsay statement is at the supplemental excerpt of record, page 187. It's at Mr. Chernow's deposition, page 143. What is, he was asked, what is the basis for your claim that you have the right to distribute these tracks? And what he said is, my dad told me that Mr. Perry told him, take these tracks, go out and license them. That was properly excluded as hearsay. The idea that this is somehow relevant to San Juan's state of mind, the state of mind doesn't create the right to disseminate the works. This goes back again to the Society Conflag case, which counsel incorrectly characterizes as having been decided on the basis of the expectancy being declared invalid because of the Supreme Court decision in the Fashion Originator's Guild case. It says, well, there's a prior adjudication that that was illegal, and that's why the right that was claimed there was interfered with. That's wrong. What the district court said in that case was that the merchants, the Dior merchants who wanted to protect their line, had no individual, Fashion Originator's Guild was about a collective group boycott. What the Society Conflag case said is, you can't create the right by acting as though you have the right. Counsel, I'm still not satisfied with the posture of this case. The district court denied your Norr Pennington defense. So there's, by the district court's own finding, there's a tribal issue as to whether your claim, that is UMG's claim, was sham or legitimate. You're saying that you can proceed to shut down Rock River when you have not established a clear title on your exclusive license. So unless you do that, what difference does it make whether Rock River can show that it has clear title to the three tracts out of the 12? Well, Your Honor, they're claiming millions of dollars in damages. That's a damage issue. I understand. That's a damage issue. They're claiming millions of dollars in damages on the basis of something that they have no right to do. Well, no right. They have no right. Why? What's to prevent them from going out and making money on the remix album if UMG has no superior right to stop them from doing and can't prove that they are violating somebody else's copyright? What right does UMG have to come out and interfere with their business? Your Honor, I think the 24-7 versus Sony case that we've cited says that one who distributes without proper authorization is committing an illegal act and can't seek to vindicate, can't seek to have their rights recompensed on that basis. But more fundamentally, Your Honor, if this was a – So that's your best case? It's a case along the lines with the others, Your Honor. Look, I'm looking at one of them that says it's a fraud. In other words, there's a clear fraud. I don't – I haven't looked at the cases recently, but when I looked at them they didn't satisfy me at all that they were talking about the kind of situation here. Rock River goes out with a product, a remix. There's no dispute that it purports to have some legal right to do it. You can dispute whether it's valid. That is, UMG can dispute whether it's valid. But in order to get past pleading and summary judgment, I still haven't heard anything that's persuasive that says they have to establish that they have a right against the world to go out and, under copyright law or whatever, and sell these albums that UMG, without any conclusive proof of its own superior right, can come in and shut them down and say, sorry, you can't profit from this. Whose rights are you asserting? UMG obviously was asserting its own rights at the outset, Your Honor. And if I may, why don't I turn to the Noor-Pennington, because I think a number of your questions have proceeded from the premise that the district court – that the district court's order on Noor-Pennington is unappealed from. No, I didn't – I know you appeal from it. All I'm saying is it's a disputed issue of fact. But what the district court in your argument is doing is putting the burden on the plaintiff in a business interference case to prove that it has an enforceable right. And I don't find that. Even if it have a – even in the contract situation, if it's a contract that's barred by the statute of frauds, it could still serve as the basis for an interference with contract claim. But in the statute of frauds case, that's because there has been a technical defect. Here, our contention is there's a complete failure of proof. Whether it is their – whether it's their burden, Judge Fischer, or our – Failure of proof of what? What are they having to prove? That they – What is the element that they have to – That they have – that they had a lawful – that they had a lawful legitimate – Who places the burden on that? Expecancy. Our reading of the case is, Your Honor, the Amart case, the Renaissance Realty case, was that it should be on them. Even if it's an affirmative defense, Your Honor. Even if it's an affirmative defense. That's why I raised the Norm Pennington dispute. Because your affirmative defense depends on your establishing that they – you've got a superior title that entitles you. You haven't shown that as a – If you can't prove your title is superior to whatever defective title that Rock River has, what have you proved? I still don't think that even if we didn't have superior title, they'd be able to recover for engaging in an illegal act. Well, that's a different question. That's a summary judgment. Rather, excuse me, that's a damage question. But to say that you can go in and shut the whole album down based on your faulty – I know this is all disputed, but UMG's inability to establish superior title or a superior title in anybody else, for that matter, that seems to me that's your burden under the way that the business interference law is articulated in California. May I turn to Norm Pennington, Your Honor? You can turn to whatever you want as long as you understand my problems. I hear – Judge Fisher, I hear your problems. I just – the point is I don't think this is a question of superior interest. I think this is a question of do they have the legitimate right. If this was a hitman who claimed that somebody had interfered with his right to follow through with what he was doing, if this was somebody trying to sell stolen property – Yeah, but then you would have the burden as a defense of proving that it was an illegal conduct. Which – The burden is on the defendant, the actor. Even if, Your Honor, the burden is placed on us, we think that the evidence shows conclusively that they didn't have the right. The only evidence that they had ultimately of their having obtained valid title, going back to Mr. Perry, was the hearsay statement of Mr. Chernow. It still doesn't establish that they don't have the right to go out as a business enterprise, that you have some standing to come in and shut them down. Let me ask it a different way. The district court did not reverse because it found that there was a failure to show that one party had a legal right and one party didn't. It was because of this alleged hearsay that was excluded based on the motion in limine, after which the district court invited a summary judgment, which sent a clear signal if you filed a motion for a summary judgment, she was going to grant it. As a trial judge, when I looked at the totality of this record, I was scratching my head about whether or not that was the just result in this case, whether or not there are disputed issues of fact that sort of trump that. And so I'm sort of siding with Judge Fisher. As I look at all of this, I'm thinking that the better course of action would have been to have allowed a trial on the merits. And then all of that would have been fleshed out in a way that would have been fair to everybody. So I want to have you weave that into your responses to his question. Sure. Well, I might. And let me try to put them together with the Nora Pennington issue, Judge Daniel. Yes. Because we've been talking a lot about, and there were a lot of statements in Mr. Falk's argument, that there were a whole bunch of rights out there. And who knew who was right? There were peaceful coexistences, and who knew who was right? And at the time in question, after all of these years of all of these disputes about the Danny Sims or about the Lee Perry chain of title from these Marley recordings, as of June 2007, for several years before, Universal had an exclusive license from Mr. Sims' company that came through the Sims line, paid well over a million dollars for that, had an exclusive license. June 15th, it's announced that they have also acquired Sanctuary Records, Sanctuary Records which had acquired previously Trojan Records, and Trojan Records which, although there had been many disputes over the years, had a 1999 agreement signed by Mr. Perry saying, here are all of these titles that I am now acknowledging are yours. They brought them together. What you have ultimately, Your Honor, is a question that, based on Universal's knowledge, that it had these, even if it had, even if we're talking just about the title that came from Danny Sims and the exclusive JAB license, they've got competent evidence that would allow them to, that would allow a reasonable litigant in their position, knowing what their, with their knowledge, knowing what their knowing, that they had some chance of prevailing on a claim of title based on that. That's all that's required under the first prong of professional real estate enterprises. That's all that, that's all that's required. The hydronautics case from this circuit makes it crystal clear that the standard for the first prong of Knorr-Pennington is the same as the malicious prosecution standard under California law. The Wilson case from the California Supreme Court says it doesn't matter if there's evidence on the other, there's evidence on the other side that would lead a reasonable person to think they might lose, that there might be somebody else who would have a different claim, that somebody else who would have a claim that would prevail. If you have competent evidence, which a license backed up by an exclusive recording agreement with Mr. Marley, backed up by payment, backed up by letters and evidence showing this, and then the acquisition of the competing line of, through the sanctuary acquisition, that is, that is more than sufficient evidence, Your Honor, for a reasonable litigant in that position to believe they have some chance of prevailing. There are, and there are no, there's nothing that is a disputed issue. With all due respect, what the district court essentially said was there's a lot of evidence in the record and there are a lot of things that Mr. Perry has said over the years that seem that they may conflict, and therefore there has to be a trial on it. That just seems like a harass of facts. But absent evidence that Universal knew that what it had was false, absent evidence that indisputably shows that. May I finish my sentence, Your Honors? Then professional real estate investors and the long line of cases from this circuit following it mandate that summary judgment should have been granted. There was simply no dispute that even if there was evidence going the other way, even if they were aware of some evidence and conflicting evidence and that the claim might lose, that that's enough. That's not malicious prosecution and that entitles you to the North Pennington defense. Well, there are disputed issues of fact here. This is not a simple matter. Each side has their argument. And I think in this type of situation, the best way to resolve it is through a trial. I can't go around taking cases like this, but all this history. And these competing claims that have been out there for years and years and years and years. And just get rid of them by summary judgment. There are lots of issues here that need to be resolved. May I respond to Ferguson? With all due respect, Your Honor, I simply disagree. I understand you get the last word, but I'd like the chance to try to persuade you, Your Honor. And the issue is on North Pennington. It simply can't be enough to say that there is a complex factual record and that it has to be tried. If you look at the malicious prosecution cases where the court says they're the same standard, what the California Supreme Court said in the Stella case, what it says in the Wilson case, is you don't want to submit these questions to a fact finder because then what you're inviting the fact finder to do is to say that it invites the fact finder to mistake a case where there were complex, complicated issues and where there was a chance that somebody might win an unsuccessful claim for an objectively baseless claim. Thank you, Your Honor. We understand. We've read your briefs. This is not a baseless claim. All right, Professor, what do you think? Thank you, Your Honor. I will be brief. On the North Pennington issue, there are a couple of things I'd like to point out why there remain, when the reasonable inferences are drawn our way, that there actually are, as the Court has indicated, issues as to the objective baselessness of the claim. One thing that I think is critically important and really, as you see in our replies, is in some sense the crux of our argument is that they knew that they couldn't enforce these rights. And some of the facts there, it may be that another litigant would have some of the same evidence and would have an objective basis, but not one that's been licensing these rights and not one that knew when it was looking at acquiring these rights that it had some real problems that don't appear to have been resolved and not based on some document, the 1999 document that wasn't signed by Trojan, wasn't authenticated by anybody and might well never get into court. There are at least reasonable inferences that go our way on that. And that's where the issues may be channeled by the trial court. The trial court has a job here in seeing exactly what goes to the jury and how it's framed, but it should still go to the jury on that issue. And on that issue as well, of course, the critical thing, again, is what do they know? The hand of the hand guards present at this court, you know, if you know that you can't, if you know you can't assert and you can't carry out the threats you're sending out, then North Pennington doesn't cover you. And indeed, that's where, as we explained, there should have been some in-camera review to see, you know, what these business executives with law degrees, who are not, whether they were really getting legal advice or whether there's something that should come into the North Pennington trial. On the first issue, the issue of the elements, I don't have anything significant to add except that the strong difference between a 24-7 or the patent cases is that the plaintiff just blew off the legal requirements. Rock River didn't do that. Rock River got a license that universal claims is insufficient. But Rock River doesn't have any kind of unclean hands. And in this circumstance, this case should go to the jury for liability. This case was set to go to the jury. That's where it should go for liability and then for whatever trial over the harm and damages that the parties can muster. Thank you very much. Thank you. This matter is submitted. Thank you, counsel. Interesting case. Thank you. Good arguments. Thank you. Thank you.
judges: Daniel, Pregerson, Fisher